IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID KRUGER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| REYNALDO GUEVARA, AS-YET UNNAMED CHICAGO POLICE OFFICERS, and the CITY OF CHICAGO, | ) ) ) |
| | ) |
| Defendants | ) |

# COMPLAINT

Plaintiff, DAVID KRUGER, by his counsel, LOEVY & LOEVY, complains against Defendants REYNALDO GUEVARA, AS-YET UNNAMED CHICAGO POLICE OFFICERS and the CITY OF CHICAGO as follows:

## INTRODUCTION

1. Plaintiff David Kruger spent more than 30 years in prison for a crime he did not commit.

2. Plaintiff was wrongfully convicted as the result of misconduct by Chicago Police Officer Reynaldo Guevara. Had it not been for Guevara's misconduct, Plaintiff would not have been wrongfully convicted.

3. The City of Chicago and its policy makers were long aware of Defendant Guevara's pattern of similar misconduct, but turned a blind eye thereto, permitting it to continue.

4. More than 30 years after Plaintiff was convicted, his wrongful conviction was overturned by the criminal justice system on account of Defendant Guevara's misconduct.

5. By this lawsuit, Plaintiff seeks redress for the tremendous injury that had been done to him. Plaintiff seeks justice for the loss of his liberty and terrible hardship he endured and continues to suffer because of Defendants' misconduct.

## JURISDICTION AND VENUE

6. Plaintiff brings this action under 42 U.S.C. 1983 and Illinois law to redress the defendants' tortious conduct and their deprivation of his rights secured by the U.S. Constitution.

7. This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over his state-law claims under 28 U.S.C. § 1367.

8. Venue is proper under 28 U.S.C. § 1391(b) because Plaintiff lives in this judicial district and the events and omissions giving rise to his claims, including the investigation, prosecution, and trial resulting in Plaintiff's conviction, happened here.

## PARTIES

9. Plaintiff David Kruger spent more than 30 years wrongfully imprisoned for a shooting crime that he did not commit.

10. The City of Chicago is an Illinois municipal corporation that employs or employed Defendant Guevara. At all relevant times, Defendant Guevara acted as an agent or employee of the City.

11. The Defendant Unnamed Chicago Police Officers all worked for the City of Chicago during the investigation at issue here, and acted under color of law and within the scope of their employment for the City of Chicago.

12. At all relevant times, Defendant Reynaldo Guevara was a police officer in the Chicago Police Department acting under color of law and within the scope of his employment for the City of Chicago. Plaintiff sues Guevara in his individual capacity.

13. Former Chicago police detective Reynaldo Guevara was a corrupt police officer who routinely violated citizens constitutional rights when conducting homicide investigations.

14. Courts and juries alike have concluded that during his lengthy career Guevara engaged in a range of abhorrent and unconstitutional misconduct, including manipulating, threatening, and psychologically and physically coercing witnesses and accused suspects; perjury; and the outright fabrication of statements, police reports, and other evidence.

15. Guevara routinely created false police reports out of whole cloth and hid the real, accurate ones. He regularly manipulated, threatened, coerced, and physically harmed witnesses and accused suspects to give false statements and testimony.

16. Guevara also regularly used fake informants, and fabricated witness and suspect statements, particularly as it relates to alibi evidence so that accused defendants cannot later defend against the false allegations in court.

17. Accused suspects have repeatedly corroborated these allegations. So have victims and innocent third party witnesses. Whistleblowing police officers have testified and spoken up about it. Respected defense attorneys have witnessed it. Even felony review prosecutors' testimony has confirmed it.

18. One court has concluded: "Given the staggering breadth of the materials regarding Detective Guevara's involvement in other cases, we succinctly state that those materials reflected a penchant for manipulating witness identifications. Many of his victims were eventually exonerated." *People v. Martinez,* 2021 IL App (1st) 190490, ¶ 47.

19. Another court concluded: "Detective Guevara engaged in a pattern and practice of intimidating, threatening, and influencing witnesses in prior homicide investigations, . . . [and

Guevara's] pattern and practice of misconduct demonstrates [petitioner's] due process claim." *People v. David Gecht,* Order, May 25, 2022, at 27.

20. Another judge concluded: "[i]t is now undisputed that former Detective Guevara, motivated by a desire to close cases regardless of whether he had found the actual perpetrator, engaged in multiple and repeated instances of police misconduct which took carious forms." *People v. David Colon,* Order, July 8, 2022, at 31-32.

21. The City of Chicago's own investigations have confirmed Guevara's pattern of abuses, including three reports by former U.S. Attorney Scott Lassar commissioned by the City of Chicago, all concluding that Guevara fabricated evidence and committed misconduct in multiple cases.

22. The City of Chicago's Office of Professional Standards (OPS) has likewise concluded Guevara lies and that his denials of allegations of various forms of misconduct were not credible.

23. All told, Guevara has been responsible for the wrongful convictions of more than three dozen individuals whose wrongful convictions were overturned, as well as numerous findings of civil liability for misconduct such as manipulating witness testimony, coercing confessions, fabricating evidence, and withholding exculpatory evidence.

24. Some of the judges and juries that have found Guevara responsible for misconduct resulting in wrongful convictions include the following: *People v. Martinez,* 2021 IL App (1st) 190490; *People v. Gomez,* 2021 IL App (1st) 192020, ¶ 58; *People v. Gonzalez,* 2016 IL App (1st) 141660, ¶¶ 34, 57; *People v. Serrano,* 2016 IL App (1st) 133493, ¶ 18; *People v. Montanez,* 2016 IL App (1st) 133726; *People v. Almodovar,* 2013 IL App (1st) 101476; *People v. Reyes,* 369 Ill. App. 3d 1, 21 (1st Dist. 2006).

**FACTUAL ALLEGATIONS**

25. On May 23, 1987, a shooting occurred at Keystone and Cortland in Chicago.

26. Kruger did not commit the crime. He is innocent.

27. Kruger testified at his bench trial that he was present hanging out on a porch in the area with Cheo (Jose Claudio) and Moises Perez. Shortly after Cheo left the porch, Cheo and a Mexican man (victim Fernando Delgado) got in a scuffle, which ended with Delgado shooting and wounding Cheo.

28. Startled, Kruger ran to the home of three sisters: Carmen, Evelyn, and Maria Rivera to take cover. While knocking on the door, he heard two more gunshots, and he later learned Moises had been shot as well.

29. The Rivera family eventually let Kruger in the door and stay for an hour. At some point, Evelyn told him that she learned the Mexican man got shot and was dead.

30. Statements from Cheo and Perez in initial, non-Guevara police reports within a day of the shooting largely corroborate this testimony. Perez, too, testified at Kruger's trial consistent with these events (though Cheo was deceased by the time of trial).

31. Weeks later, after Guevara became involved in the investigation and improperly manipulated the witness testimony, each of the three Rivera sisters gave police statements indicating that Kruger confessed to the shooting at the Rivera home, and Carmen and Evelyn testified to the same.

32. Unlike the Guevara police report, Maria did not testify to Kruger confessing, but did claim that Kruger gave her a medallion-which she subsequently lost. The police report documenting this exchange claims that Guevara told Maria the medallion was stolen from the victim, noting in all

caps, that Maria believed the charm belong to Kruger UNTIL GCSP GUEVARA INFORMED HER DIFFERENTLY."

33. Kruger did not confess to these witnesses, or anyone else, and maintains his innocence of shooting or robbing Delgado.

34. The only occurrence witness, Edgardo DeValle, also supposedly implicated Kruger weeks later once Guevara got involved in the investigation. Specifically, the report claims Del Valle was sitting on the front porch of Victor Resto's house with Victor and "Carmen" when he witnessed the events unfold, beginning with the argument between the Cheo and Delgado, followed by the chase with Delgado and Moises Perez, and culminating with Kruger shooting Delgado.

35. However, in the initial police report in the day after the shooting--prior to Guevara's involvement in the case--Victor Resto was interviewed and said he was watching television inside his home when they heard the gunshots and looked out the front window, but they did not see any shooting. Two other individuals, Luis Resto, and Maria Rodriguez, said the same, and none of them mentioned Edgar Del Valle was present with them.

36. The Guevara-inclusive report also claims Del Valle told police that Kruger confessed to the killing days later and then, in a different conversation, told him he sold the gun.

37. Del Valle later testified that he witnessed Kruger shoot the victim. However, before his testimony inculpating Kruger, DeValle testified that the police "forced [him] to come to court," and he denied that he told investigators at the police station that he saw Kruger shoot the victim. Indeed, Del Valle denied he was out on the street at all or witnessed any part of the events, which is more consistent the initial police investigation.

38. However, in the middle of the Friday direct examination, the court, sua sponte, suspended the case and admonished Del Valle he could be prosecuted for perjury if he did not tell the

truth. The court instructed Del Valle to consult with a lawyer over the weekend, and Del Valle's testimony was suspended and picked up after a weekend break.

39. The following Monday the court learned that Del Valle never spoke to a lawyer, but the prosecutor instructed the court that Del Valle was no longer going to be testifying inconsistently with his prior statements. Only then did Del Valle resume his testimony on Monday morning and switch his testimony to coincide with his false statements in police custody and implicate Kruger. However, even then, he denied certain aspects of the police report, such as ever saying he was with "Carmen" on the porch at the Resto residence.

40. All of the Rivera sisters except Carmen are deceased. Carmen has since revealed to an investigator that prior to May 1987, she knew Guevara because he repeatedly sexually assaulted her and her sisters. She was terrified and paralyzed with fear over Guevara.

41. Carmen remembers the day she heard a series of gunshots, a knock on the door, and letting Kruger in. Carmen denied that Kruger ever made any admissions to her or even talking to him substantively that night.

42. Carmen recalls Guevara coming to her home at times after the shooting. She was absolutely terrified of Guevara and would have done anything he told her to do, including lying about the shooting.

43. In the manner described above, Guevara and the other Defendants manipulated and fabricated witness testimony, and created false police reports to cover up evidence of the Defendants' misconduct. These false witness statements and police reports were all provided to state prosecutors and became the basis for charging and prosecuting Plaintiff.

44. At all times, Guevara and the other Defendants suppressed the true circumstances of their misconduct, improperly failing to disclose their misconduct to Plaintiff or his attorneys. These

Defendants also suppressed and destroyed additional evidence still unknown to Plaintiff, which would also have shown Plaintiff's innocence.

45. In prior proceedings, Guevara has been asked under oath direct and pointed questions about his investigation of Plaintiff's case and allegations of his misconduct in this investigation. In response to those questions, Guevara has refused to deny the allegations, instead invoking his Fifth Amendment privilege against self-incrimination.

46. As a result of Defendants' misconduct and based on the false evidence they manufactured, Defendants arrested Plaintiff for the shooting at issue. The false evidence used to establish probable cause was all fabricated and manufactured by the Defendants. On this basis, Plaintiff was charged, prosecuted, and convicted.

47. At trial, the State's case hinged entirely on the fabricated witness statements and other false evidence manufactured by the Defendants. Following the trial, the judge found Plaintiff guilty.

48. Following his wrongful conviction, Plaintiff was sent to prison, where he remained for decades, until his conviction was invalidated in a manner indicative of his innocence.

49. During his decades of wrongful imprisonment, Plaintiff was deprived of all the basic pleasures of human experience that free people enjoy as a matter of right, including the freedom to live one's life as an autonomous human being.

50. Plaintiffs suffering did not end with his release from prison. Defendants' misconduct continues to cause Plaintiff extreme physical and psychological pain and suffering, humiliation, constant fear, anxiety, deep depression, despair, rage, and other physical and psychological effects.

**The City of Chicago's Policies and Practice**

51. The City of Chicago and the Chicago Police Department are responsible, by virtue of their official policies, for inflicting miscarriages of justice in scores of criminal cases like Plaintiff's case.

52. Since the 1980s, at least 100 cases have come to light in which Chicago police officers fabricated false evidence or suppressed exculpatory evidence to cause the convictions of innocent people for serious crimes they did not commit.

53. In many of these cases, Chicago police officers used the same tactics Defendants employed against Plaintiff in this case, including but not limited to fabricating evidence, concealing exculpatory evidence, manipulating witnesses to influence identifications and testimony, and using other tactics to secure the arrest, prosecution, and conviction of a person without probable cause or regard for the person's actual guilt.

54. At all relevant times, members of the Chicago Police Department, including Defendants in this action, routinely fabricated and manipulated identification procedures to procure suspect identifications they knew were inaccurate.

55. At all relevant times, members of the Chicago Police Department, including Defendants in this action, systematically suppressed exculpatory and impeaching material by intentionally secreting discoverable reports, memos, and other information. This concealed material was kept in files that were maintained only at the Chicago Police Department and never disclosed to criminal defendants, their attorneys, or state prosecutors. As a matter of widespread custom and practice, these clandestine files were withheld from the State's Attorney's Office and from criminal defendants, and they were routinely destroyed or hidden at the close of the investigation rather than being preserved as part of the official file.

56. Consistent with the municipal policy and practice described in the preceding paragraph, employees of the City of Chicago, including Defendants, concealed exculpatory evidence from Plaintiff.

57. The existence of this policy and practice of suppressing exculpatory or impeaching material in clandestine files was established and corroborated at trial in the cases of *Rivera v. Guevara,* No. 12-cv-4428 (N.D. Ill.), *Fields v. City of Chicago,* No. 10-cv-1168 (N.D. Ill.), and *Jones v. City of Chicago,* No. 87-cv-2536 (N.D. Ill.), among others.

58. The policies and practices of file suppression exposed in Fields were in place from the 1980s through the 2010s, including at the time of the investigation at issue here.

59. Moreover, the City of Chicago and the Chicago Police Department routinely failed to investigate cases in which Chicago police detectives recommended charging an innocent person with a serious crime. No Chicago police officer has ever been disciplined for misconduct in any of those cases.

60. Before and during the period in which Plaintiff was falsely charged and convicted, the City of Chicago also operated a dysfunctional disciplinary system for Chicago police officers accused of serious misconduct. The City almost never imposed significant discipline against officers accused of violating the civil and constitutional rights of members of the public. Further, the disciplinary apparatus had no mechanism for identifying police officers who were repeatedly accused of engaging in misconduct.

61. Leaders of the Chicago Police Department and elected officials in Chicago have acknowledged a code of silence within the Chicago Police Department, condoned and facilitated by municipal policy makers and department supervisors. Under the code of silence, officers refused to

report and otherwise lied about their colleagues' misconduct, including the kind of misconduct at issue in this case.

62. As a result of the City of Chicago's established practices, officers (including Defendants) have come to believe they may violate civilians' civil rights and cause innocent people to be charged with serious crimes without fear of adverse circumstances. The practices that enable this belief include failing to track and identify police officers repeatedly accused of serious misconduct, failing to investigate cases where police were involved in a wrongful charge or conviction, failing to discipline officers accused of serious misconduct, and facilitating a code of silence within the Chicago Police Department. As a result of these policies and practices of the City of Chicago, members of the Chicago Police Department act with impunity when they violate the constitutional and civil rights of citizens.

63. This belief extends to Defendants in this case. They engaged in the described misconduct because they had no reason to fear the City of Chicago and its police department would ever discipline them for doing so.

64. The City of Chicago and its police department also failed in the years before Plaintiff's wrongful conviction to provide adequate training to Chicago police detectives and other officers in many areas, including the following: the constitutional requirement to disclose exculpatory evidence, including how to identify such evidence and how to ensure such evidence is made part of the criminal proceeding; the risks of wrongful conviction and the steps police officers should take to minimize risks; the risks of engaging in tunnel vision during investigation; and the need for full disclosure, candor, and openness on the part of all officers who participate in the police disciplinary process, both as witnesses and as accused officers, and the need to report misconduct committed by fellow officers.

65. The need for police officers to be trained in these areas was and remains obvious to the City. The City's failure to train Chicago police officers as alleged in the preceding paragraph caused Plaintiff's wrongful conviction and his injuries.

66. The City's failure to train, supervise, and discipline its officers, including the individual defendants in this case, condones, ratifies, and sanctions the kind of misconduct that Defendants committed against Plaintiff.

67. The City of Chicago and final policymaking officials within the Chicago Police Department failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct. They thereby perpetuated the unlawful practices and ensured no action would be taken (independent of the judicial process) to remedy Plaintiff's ongoing injuries.

68. The policies and practices described in the foregoing paragraphs were also approved by the City of Chicago policymakers, who were deliberately indifferent to the violations of constitutional rights described in this complaint.

69. Indeed, Defendants engaged in the misconduct set forth in this complaint because they knew the City of Chicago and its police department tolerated and condoned such conduct.

## COUNT I
## 42 U.S.C. § 1983
### Violation of Due Process

70. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

71. As described above, Defendants, while acting individually, jointly, and in conspiracy with each other, and under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial and his right not to be wrongfully convicted and imprisoned.

72. In the manner described above, Defendants made false statements falsely implicating Plaintiff in the crime, knowing this evidence was false.

73. Defendants obtained Plaintiff's arrest and conviction using this false evidence, and they failed to correct fabricated evidence they knew was false when it was used against Plaintiff during his criminal case.

74. In addition, Defendants deliberately withheld exculpatory evidence from state prosecutors, Plaintiff, and Plaintiff's criminal defense attorneys, thereby misleading and misdirecting the criminal prosecution of Plaintiff.

75. In addition, on information and belief, Defendants concealed, fabricated, and destroyed other evidence not yet known to Plaintiff.

76. Defendants' misconduct caused Plaintiff's unjust and wrongful criminal prosecution and deprivation of liberty, violating his right under the Fourteenth Amendment to a fair trial. Absent Defendants' misconduct, Plaintiff's prosecution could not and would not have been pursued.

77. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and in total disregard of the truth and Plaintiff's clear innocence.

78. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, forced and involuntary prison labor, and other grievous and continuing injuries and damages as set forth above.

79. Defendants undertook the misconduct described in this Count pursuant to the policies and practices of the City of Chicago and the Chicago Police Department, in the manner more fully described below.

## COUNT II
## 42 U.S.C. § 1983
### Malicious Prosecution and Unlawful Detention

80. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

81. As described above, Defendants individually, jointly, and in conspiracy with each other, and under color of law and within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff. They did so without any probable cause and despite knowing Plaintiff was innocent, in violation of his rights secured by the Fourth and Fourteenth Amendments.

82. In so doing, Defendants maliciously prosecuted Plaintiff, caused Plaintiff to be deprived of his liberty without probable cause, and caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

83. The misconduct described in this Count was objectively unreasonable, and Defendants undertook the misconduct intentionally and in total disregard of the truth and Plaintiff's clear innocence.

84. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

85. Defendants undertook the misconduct described in this Count pursuant to the policies and practices of the City of Chicago and the Chicago Police Department, in the manner more fully described below.

## COUNT III
## 42 U.S.C. § 1983
## Failure to Intervene

86. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

87. As described above, during the constitutional violations described in this complaint, one or more of the Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights.

88. Defendants had ample, reasonable opportunities and the duty to prevent this harm but failed to do so.

89. The misconduct described in this Count was objectively unreasonable, and Defendants undertook the misconduct intentionally and in total disregard of the truth and Plaintiff's clear innocence.

90. As a result of these Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

91. The misconduct described in this Count by the Defendants was undertaken pursuant to the policies and practices of the City of Chicago and the Chicago Police Department, in the manner more fully described herein.

## COUNT IV
## 42 U.S.C. § 1983
## Conspiracy to Violate Constitutional Rights

92. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

93. As described more fully above, Defendants, acting in concert with other co- conspirators, known and unknown, reached an agreement among themselves to fabricate evidence, suppress evidence, and coerce identifications to detain, prosecute, and convict Plaintiff,

without regard for Plaintiff's guilt or innocence, and thereby to deprive him of his constitutional rights.

94. In so doing, these co-conspirators agreed to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect each other from liability for depriving Plaintiff of those rights.

95. In furtherance of their conspiracy, each co-conspirator committed overt acts and was otherwise a willful participant in joint activity.

96. The misconduct described in this Count was objectively unreasonable, and Defendants undertook the misconduct intentionally and in total disregard of the truth and Plaintiff's clear innocence.

97. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

98. Defendants undertook the misconduct described in this Count pursuant to the policies and practices of the City of Chicago and the Chicago Police Department, in the manner more fully herein.

## COUNT V
### State Law Claim
### Malicious Prosecution

99. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

100. As described above, Defendants individually, jointly, and in conspiracy with each other, and within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so.

101. In so doing, Defendants caused Plaintiff to be subjected improperly to judicial proceedings for which there was no probable cause. Those judicial proceedings were instituted and continued maliciously, resulting in injury.

102. The judicial proceedings were terminated in Plaintiff's favor and in a manner indicative of his innocence when his conviction was vacated and charges against him were dropped in 2024.

103. The misconduct described in this Count was objectively unreasonable and Defendants undertook the misconduct intentionally, with malice, and in total disregard of the truth and Plaintiff's clear innocence.

104. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## COUNT VI
## State Law Claim
## Intentional Infliction of Emotional Distress

105. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

106. Defendants' actions, omissions, and conduct described above were extreme and outrageous. Their actions were rooted in an abuse of power and authority. And their actions were undertaken with the intent to cause, or with reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

107. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## COUNT VII
### State Law Claim
### Willful and Wanton Conduct

108. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

109. At all times relevant to this complaint Defendants had a duty to refrain from willful and wanton conduct.

110. Notwithstanding that duty, Defendants acted willfully and wantonly through a course of conduct that showed an utter indifference to, or conscious disregard of, Plaintiff's rights.

111. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## COUNT VIII
### State Law Claim
### Civil Conspiracy

112. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

113. As described more fully in the preceding paragraphs, Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and conspired by concerted action to accomplish an unlawful purpose, to achieve a lawful purpose by unlawful means, or both. In addition, these co-conspirators agreed among themselves to protect each other from liability for depriving Plaintiff of his rights.

114. In furtherance of their conspiracy, each co-conspirator committed overt acts and was otherwise a willful participant in joint activity.

115. The violations of Illinois law described in this complaint, including Defendants' malicious prosecution of Plaintiff and their intentional infliction of emotional distress, were accomplished by Defendants' conspiracy.

116. The misconduct described in this Count was objectively unreasonable, and Defendants undertook the misconduct intentionally and in total disregard of the truth and Plaintiff's clear innocence.

117. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## COUNT IX
### State Law Claim
### Respondeat Superior

118. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

119. While committing the misconduct alleged in the preceding paragraphs, the individual defendants were employees, members, and agents of the City of Chicago, acting at all relevant times within the scope of their employment.

120. Defendant City of Chicago is liable as principal for all torts committed by its agents.

## COUNT X
### State Law Claim
### Indemnification

121. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

122. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

123. The individual defendants were employees, members, and agents of Defendant City of Chicago, acting at all relevant times within the scope of their employment in committing the misconduct described herein.

124. Defendant City of Chicago is responsible to pay any judgment entered against the individual defendants.

WHEREFORE, Plaintiff DAVID KRUGER, respectfully requests this Court enter a judgment in his favor and against Defendants CITY OF CHICAGO, REYNALDO GUEVARA, AND AS-YET UNNAMED CHICAGO POLICE OFFICERS, awarding compensatory damages, attorneys' fees, and costs against each defendant, punitive damages against each individual defendant, and any other relief the Court deems just and appropriate.

### JURY DEMAND

Plaintiff DAVID KRUGER hereby demands a trial by jury under Federal Rule of Civil Procedure 38(b) on all issues so triable.

DATED: November 21, 2025                Respectfully submitted,

                                        /s/ Jon Loevy
                                        Jon Loevy
                                        Russell Ainsworth
                                        LOEVY & LOEVY
                                        311 N. Aberdeen
                                        Chicago, IL 60607